IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| 77 INSAAT VE TAAHHUT ANONIM SIRKETI,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Case No. 25-1444 C |

## COMPLAINT

Plaintiff, 77 Insaat Ve Taahhut Anonim Sirketi, by and through undersigned counsel, hereby brings this Complaint against Defendant, the United States of America, and states as follows:

## PARTIES

1. 77 Insaat Ve Taahhut Anonim Sirketi ("Plaintiff" or "77 Insaat"), is a corporation with a principal place of business in Istanbul, Turkey.

2. At all relevant times, 77 Insaat was and continues to be engaged in the construction business as a design-build engineer.

3. Defendant is the United States of America, acting at all relevant times through the Naval Facilities Engineering Systems Command Europe Africa Southeast Asia ("Defendant" or "NAVFAC").

**JURISDICTION**

4. This Court has jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a) and the Contract Disputes Act of 1978, 41 U.S.C. § 7104(b) ("CDA").

5. This dispute arises out of Contract No. N3319116D1040 (the "Contract") between 77 Insaat and NAVFAC, wherein 77 Insaat was the design-builder required to furnish all labor, management, supervision, tools, materials, and equipment necessary to repair the water system in Djibouti, Africa by providing new water supply wells at Camp Lemonnier, commonly known as the Water System Repair Project, Phases I and II (hereafter, the "Project").

6. Pursuant to the terms of the Contract, disputes arising out of the work are subject to the CDA, FAR 52.242-14, and FAR 52.243-4.

7. On or about May 23, 2024, 77 Insaat submitted a Request for Equitable Adjustment ("77 Insaat REA") to the Contracting Officer seeking an equitable adjustment to the Contract Price in the amount of $2,715,682.16 and further sought an adjustment to its Contractor Performance Assessment Report ("CPARS") rating due to NAVFAC's material changes to the Contract, suspension of the work, and delays attributable to the COVID-19 Pandemic Base Closure Period.

8. On or about November 7, 2024, 77 Insaat submitted a Certified Claim ("77 Insaat Claim") seeking an equitable adjustment to the Contract Price in the amount of $2,715,682.16 and an adjustment to its CPARS rating due to NAVFAC's material changes to the Contract, suspension of the work, and delays attributable to the COVID-19 Pandemic Base Closure Period. **Exhibit A.**[1] The 77 Insaat Claim was based on the information contained in the 77 Insaat

---

[1] Both the 77 Insaat REA and 77 Insaat Claim erroneously included a line item for $249,677 in their respective requests for equitable adjustments. 77 Insaat has removed this line item from its total claim for damages in this complaint, resulting in a $249,677 downward adjustment in its request for relief.

REA, sought an equitable adjustment in an equal amount to that which was requested in the 77 Insaat REA, and incorporated the 77 Insaat REA by reference.

9. On November 12, 2024, 77 Insaat received an email from the Contracting Officer ("CO") confirming receipt of the 77 Insaat Claim.

10. On November 20, 2024, NAVFAC sent 77 Insaat a Projected Final Decision Date letter stating that a Contracting Officer's Final Decision ("COFD") would be issued on or before January 13, 2025.

11. On January 8, 2025, NAVFAC sent 77 Insaat a second Projected Final Decision Date letter that pushed the projected COFD to on or before March 31, 2025.

12. On March 25, 2025, NAVFAC sent 77 Insaat a third Projected Final Decision Date letter that further pushed the projected COFD to on or before April 30, 2025.

13. On April 22, 2025, NAVFAC sent 77 Insaat a fourth Projected Final Decision Date letter that again pushed the projected COFD to on or before May 30, 2025.

14. On June 12, 2025, NAVFAC send 77 Insaat a letter regarding "DECISIONS ON CONTRACT N3319116D1040 – N3319118F4379 REQUEST FOR EQUITABLE ADJUSTMENT (REA), addressing letter dated 23 May 2024."

15. NAVFAC's June 12 letter addressed 77 Insaat's entitlement under the 77 Insaat REA dated May 23, 2024, but did not provide a COFD on the 77 Insaat Claim.

16. Within 60 days of submission of a certified claim, the Government is required to either issue a COFD to a contractor or provide the contractor with notice of a date by which a COFD will be issued. If the latter, the COFD may be issued sometime after 60 days of submission of the certified claim. 41 U.S.C. § 7103(f)(2). The Government may not further extend the COFD deadline a second time. *Rudolph and Sletten, Inc. v. United States*, 120 Fed. Cl. 137, 141-42

(2015). Consequently, pursuant to 41 U.S.C. § 7103(f)(5) and 7104(b), 77 Insaat may appeal the deemed denial of the 77 Insaat Claim to this Court, and the Court has jurisdiction to hear 77 Insaat's claims.

## FACTS

17. The allegations set forth in Paragraphs 1 through 16 are incorporated by reference as if fully set forth herein.

18. The Contract between 77 Insaat and NAVFAC required 77 Insaat to furnish labor, management, supervision, tools, materials, and equipment necessary to repair the water system in Djibouti, Africa by providing new water supply wells at Camp Lemonnier.

19. The total sum of the Contract was $9,783,294 and the period of performance was 545 days.

20. Throughout its performance of work on the Project, 77 Insaat experienced significant delays and impacts due to Government-directed changes to the Contract, various differing site conditions, and suspension of 77 Insaat's work.

21. 77 Insaat diligently recorded Project delays and site impacts in emails and Serial Letters that were delivered to the CO, which included details regarding specific impacts and costs associated with each identified impact.

### I. Impacts Due to NAVFAC Changes to the Contract

22. As explained in Serial Letter No. 311 dated 20 July 2020 and in the 77 Insaat REA and Claim, 77 Insaat incurred $431,557 in reimbursable costs under the Contract. These costs were incurred as a result of Government-directed changes requiring 77 Insaat to spend 140 days on construction activities that were originally scheduled for 39 days of work. In Serial Letter No. 311, 77 Insaat reserved the right to later request an additional 62 days to complete further work.

23. 77 Insaat incurred these costs due to discrepancies between site conditions and the bid documents incorporated into the Contract, which originally depicted Line L as a single line. In reliance on the bid documents, specifications, and drawings, 77 Insaat prepared its bid to reflect the time and costs necessary to perform work on Line L with the expectation that it would be a single line.

24. Following NAVFAC's initial review of 77 Insaat's base schedule, NAVFAC realized that the water line construction would obstruct the operations of Air Fields, AirOps, and the Fire Department, and thereafter directed 77 Insaat to perform work in phases.

25. The Government produced a CPARS report on February 6, 2020, explaining the issues encountered by 77 Insaat (and 77 Insaat's satisfactory responses thereto). Specifically, Government official Angel Aviles reported that 77 Insaat was not meeting the project schedule, "mainly due to a series of unforeseen utility infrastructure found on the sites that has forced [77 Insaat] to only use manual labor for excavation in order to avoid breaking critical infrastructure." Aviles went on to report that the Government "continues to ask the contractor to execute work in phases that were not included in the original RFP," and that 77 Insaat was "very responsive [and] flexible on site changes and team players. They never say no to changes in the schedule requested by the Government in order to meet operational requirements. Contractor always addresses Government concerns in a timely manner."

26. As further described in Serial Letter No. 317 dated 29 September 2020, as a result of Government-directed changes to Line L's construction, 77 Insaat was required to perform work in additional phases. Serial Letter No. 317 details 77 Insaat's REA seeking an additional $145,973 in costs and 40 days of time extension to perform this work in phases that were not contemplated by the bid documents.

27. As described in Proposed Change Orders ("PCO") 006 and 007 and in the 77 Insaat REA, the Government's changes also required 77 Insaat to de-scope certain work on Lines J and K, which caused 77 Insaat to incur $135,302 in additional costs. 77 Insaat incurred these costs after the Government de-scoped certain piping replacement work after directing 77 Insaat to perform ground penetrating radar and extensive manual (i.e., hand-digging) exploratory excavation work, which also caused 77 Insaat to suffer schedule delays.

28. In a letter dated 13 August 2020, the Government denied 77 Insaat any compensation for this exploratory excavation work.[2]

29. On 11 December 2021, 77 Insaat sent the Government an email attaching a document titled "RFP 03 04 Line J and Line K" explaining the costs incurred by 77 Insaat in connection with its extensive hand digging work on Lines J and K. 77 Insaat's supporting documents show that the costs 77 Insaat incurred in connection with phasing and exploratory digging exceeded the credits due to the Government as a result of de-scoping this work.

30. The Government did not respond to 77 Insaat's 11 December 2021 email.

**II. Impacts Due to NAVFAC's Suspension of Work**

31. 77 Insaat initially documented NAVFAC's suspension of work and Base closure due to COVID-19 in Serial Letter Nos. 307 and 308. In Serial Letter No. 307 dated 14 April 2020 and Serial Letter 308 dated 11 May 2020, 77 Insaat notified the Government that 77 Insaat was incurring costs in connection with equipment rentals, critical path delays, personnel costs, and other general categories of delays and damages.[3]

---

[2] 77 Insaat and the Government were unable to agree as to the proper credit due to the Government as a result of the Government's decision to de-scope this work.

[3] Amendment A00004 dated 20 March 2020 partially suspended activities on 77 Insaat's critical path. Amendment A00005 lifted the partial suspension on 29 May 2020.

32.     More specifically, the Government suspended 77 Insaat's ability to perform work on the Base's Elevated Water Tank ("EWT") for a period of 65 working days. Following a series of emails and related Serial Letters attempting to negotiate the extent of 77 Insaat's costs incurred as a result of the EWT work suspension, 77 Insaat submitted a revised final proposal dated 23 October 2020 seeking an equitable adjustment in the amount of $245,484.[4]

33.     Due to NAVFAC's Base closure, NAVFAC restricted 77 Insaat's access to the Project site for 150 days, which negatively impacted 77 Insaat's ability to perform work under the agreed upon period of performance and within the Contract's agreed upon sum.

34.     During this period, 77 Insaat's employees were required to apply for new visa waivers and renewal badges because their original documentation did not account for the Base closure period and additional time needed to perform work. 77 Insaat was required to continue paying its employees' wages while those employees were on standby. Through Serial Letter No. 316 dated 4 September 2020, 77 Insaat submitted an REA for $770,111 pursuant to the Changes and Suspension of Work clauses of the Contract. *Id.*

35.     Before the Base closure period, 77 Insaat submitted a proposal to the Government for the procurement of certain electrical switchgear equipment. The Government did not timely approve of 77 Insaat's proposal, requiring 77 Insaat to order the equipment in advance in June 2020 in order to avoid future Project delays. When the switchgear materials were ultimately delivered, 77 Insaat was forced to delay installation of the materials in order to align its activities with the existing construction schedule.

---

[4] 77 Insaat's original calculation for this portion of the 77 Insaat Claim totaled $264,770. Upon further investigation and following negotiations with the Government, 77 Insaat adjusted this claim downward to $245,484. The 77 Insaat Claim erroneously included the unmodified $264,770 calculation. This complaint uses the correct $245,484 calculation.

36.     On 4 January 2021, 77 Insaat sent NAVFAC a Time Impact Analysis outlining $354,824 in damages 77 Insaat incurred as a result of delayed electrical switchgear installation activities.

37.     Nearly a year later, on 27 December 2021, the Government issued Amendment A00008 to the Contract approving a $100,470.00 increase in the Contract price, but A00008 did not compensate 77 Insaat for its costs incurred in connection with the schedule delays caused by the Government's delay in approving 77 Insaat's proposal to procure the switchgear materials.

38.     As explained in Serial Letter No. 317 dated 22 February 2021 and in the 77 Insaat REA, there were chemical materials stored on site during the Base closure period that could not be stored at the proper temperatures, and which therefore ultimately expired. Due to global supply chain disruptions and manufacturing delays, the delivery time for replacement materials were significantly longer than expected. 77 Insaat's ability to complete construction work in a timely manner was directly impacted by NAVFAC's delays. These circumstances were outside 77 Insaat's control. The 77 Insaat REA and 77 Insaat Claim requested $146,060 to recover these costs from NAVFAC.[5]

39.     In Serial Letter No. 318-Rev 1 dated 10 March 2021, 77 Insaat documented the fact that the construction site was left unattended during the Base closure period. Upon returning to the Project site, 77 Insaat performed, among other things, clearing activities, excavation work, and other items resulting from equipment and materials being left on site during the closure period. Serial Letter No. 318-Rev 1 transmitted 77 Insaat's request for an equitable adjustment totaling $51,775 for these costs, which 77 Insaat adjusted to $60,408 upon submission of the 77 Insaat REA and Claim.

---

[5] Serial Letter No. 317 sought $144,115 for these costs, which 77 Insaat adjusted to $146,060 upon submission of the 77 Insaat REA and Claim.

40. As detailed in Serial Letter No. 319, NAVFAC's drawings and specifications for the West Fire Pump Station were incompatible with the site conditions (i.e., ground elevations), which 77 Insaat discovered upon completion of site surveys. 77 Insaat determined that the elevation differences would not permit 77 Insaat to complete construction according to NAVFAC's design. 77 Insaat incurred $18,897 in costs as a result of the issues identified in Serial Letter No. 319.

**III. CPARS Evaluation**

41. NAVFAC provided 77 Insaat with a "Satisfactory" CPARS rating for its performance on the Project.

42. This rating does not accurately reflect 77 Insaat's work and fails to consider the impacts of NAVFAC's material changes to the Contract and the effects of COVID-19 on 77 Insaat's ability to perform work.

43. In the 77 Insaat Claim, 77 Insaat respectfully requested a reevaluation of its performance and an adjustment to its CPARS rating to "Very Good" or "Exceptional."

**COUNT I: CHANGES (FAR 52.243-4)**

44. The allegations set forth in Paragraphs 1 through 43 are incorporated by reference as if fully set forth herein.

45. The Contract is a valid and enforceable contract.

46. The Contract contains the Changes clause, FAR 52.243-4, which allows the contractor to recover costs associated with any delays caused by a change made by the Government that alters: (1) the specifications; (2) the method or manner of performance; (3) Government-furnished facilities, equipment, materials, services, or the site; or (4) the time for performance.

47. Throughout the Project, NAVFAC made numerous unilateral material changes to the Contract that impacted 77 Insaat's ability to perform work and which caused significant delays and increased costs.

48. The changes made by NAVFAC include but are not limited to:

   a. Additional phases to the sequence of work and requirement for 77 Insaat to perform work out-of-sequence;

   b. Differing site conditions.

49. 77 Insaat is entitled to recover $712,832 under the Changes clause for the additional costs and time impacts to its performance directly resulting from NAVFAC's unilateral changes to the Contract.

## COUNT II: SUSPENSION OF WORK (FAR 52.242-15)

50. The allegations set forth in Paragraphs 1 through 49 are incorporated by reference as if fully set forth herein.

51. The Contract contains the Suspension of Work clause, FAR 52.242-15, which provides that, if the CO orders a suspension, delay, or interruption of the Contract for an unreasonable period of time, the contractor is entitled to an equitable adjustment to the Contract.

52. As a direct result of NAVFAC's Base closure period, 77 Insaat experienced significant and unreasonable delays and cost impacts.

53. 77 Insaat's work was also impacted due to materials expiring while on standby on-site during the Base closure period. 77 Insaat was required to reorder and pay for additional materials.

54. 77 Insaat is entitled to $1,595,784 under the Suspension of Work clause for the costs and time impacts to its performance as a direct result of NAVFAC's suspension of work.

## COUNT III: DECLARATORY JUDGMENT (CPARS)

55. The allegations set forth in Paragraphs 1 through 54 are incorporated by reference as if fully set forth herein.

56. NAVFAC provided 77 Insaat with a "Satisfactory" CPARS rating for its performance on the Project.

57. This rating does not accurately reflect 77 Insaat's work and fails to consider the impacts of NAVFAC's material changes to the Contract and the effects of COVID-19 on 77 Insaat's ability to perform work.

58. In the 77 Insaat Claim, 77 Insaat requested a reevaluation of its performance and an adjustment to its CPARS rating to "Very Good" or "Exceptional."

59. NAVFAC has refused to adjust 77 Insaat's CPARS rating.

60. 77 Insaat is entitled to a fair and accurate performance evaluation.

61. 77 Insaat is entitled to a declaration that it is entitled to a fair and accurate performance evaluation and that NAVFAC must reevaluate 77 Insaat's performance under the Contract and issue a revised CPARS rating consistent with 77 Insaat's performance.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, 77 Insaat Ve Taahhut Anonim Sirketi, respectfully demands this Court to:

A. Enter judgment in favor of 77 Insaat and against the United States adjusting the Contract amount by an additional $2,308,616 as a result of NAVFAC's violation of FAR 52.243-4 and FAR 52.242-15;

B. Declare that 77 Insaat is entitled to an adjustment of the Contract time by at least 65 days for activities related to the EWT construction;

C. Award 77 Insaat its REA preparation costs totaling at least $35,000;

D. Award 77 Insaat its G&A costs totaling at least $103,103.16;

E. Award 77 Insaat interest on such judgment pursuant to the Contract Disputes Act;

F. Award interest on all amounts found due and unpaid on the Claim, pursuant to FAR 33.208;

G. Award 77 Insaat its reasonable attorneys' fees, expenses, and consultant fees as permitted by law or regulation;

H. Declare that 77 Insaat is entitled to a fair and accurate performance evaluation and that NAVFAC must reevaluate 77 Insaat's performance under the Contract and issue a revised CPARS rating consistent with 77 Insaat's performance; and

I. Award 77 Insaat any other relief which this court may deem just and proper.

August 28, 2025

Respectfully submitted,

__/s/ Dirk D. Haire____
Dirk D. Haire
Michael J. Brewer
Burr & Forman LLP
99 M St. SE #425
Washington, D.C. 20003
dhaire@burr.com
Tel: (771) 232-1701
Attorneys for 77 Insaat Ve Taahhut Anonim Sirketi